UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION


BE WELL PROVIDERS, LLC,
f/k/a Eating Anxiety Therapy Clinic, LLC                    PLAINTIFF
d/b/a Behavioral Wellness Clinic;
Louisville Center for Eating Disorders

v.                                                          No. 3:20-cv-241-BJB

ANTHEM HEALTH PLANS OF KENTUCKY, INC.                       DEFENDANT
d/b/a Anthem Blue Cross Blue Shield

* * * * *

## MEMORANDUM OPINION & ORDER

Be Well Providers is an outpatient eating-disorder treatment center that provided out-of-network health services to patients covered by Anthem insurance policies. When Anthem refused to reimburse Be Well for all the services it provided, Be Well sued Anthem in state court.

Anthem removed the case to federal court, contending that ERISA—the federal Employee Retirement Income Security Act of 1974—governs at least some of the insurance plans at issue. Notice of Removal (DN 1) ¶ 5. Anthem moved for judgment on the pleadings, DN 13, and the parties filed cross-motions for summary judgment, DNs 27 and 28. As to the ERISA-plan beneficiaries, the Court agrees with Anthem that Be Well may not assert ERISA claims on the beneficiaries' behalf and has not adequately pled a claim for promissory estoppel under Kentucky law. As to the non-ERISA beneficiaries, however, the Court denies Be Well's and Anthem's motions for summary judgment, without prejudice, on Be Well's promissory-estoppel claim.

### I.   The Record

Be Well is not part of Anthem's provider network. It nevertheless provided services to Anthem beneficiaries, according to its complaint, for two reasons. First, the patients assigned their rights to payment to Be Well. Complaint (DN 1-1) ¶¶ 12–13. Second, Anthem sent preauthorization letters—formally addressed to the patients, but mailed to and for the provider—stating that the services were medically necessary and should be reimbursed absent a change in coverage or other conditions not implicated here. ¶¶ 10–11, 13.

Yet Anthem later denied payment for some of the services that Be Well delivered to five patients covered under their parents' benefit plans. Oral Arg. Tr. at 3:10–12.[1] It explained that these "bundled services" had already been paid as "related charges" covered by other Anthem reimbursements. ¶¶ 14–23; Be Well MSJ (DN 27) at 4; Be Well MSJ Response (DN 30) at 3. Be Well sued in state court, raising several contract and tort causes of action under Kentucky law. It did so based on the patients' purported assignments of their rights to Be Well, and on the preauthorization letters Anthem sent its patients (c/o Be Well). Complaint ¶¶ 33–65. Perhaps anticipating a potential ERISA defense, Be Well contended that ERISA didn't cover those plans. ¶ 30. In the alternative, even if ERISA did apply, Be Well argued that Anthem violated its federal statutory obligations by arbitrarily denying payment. ¶ 31.

The Anthem preauthorization letters are nearly identical. *See* Admin. Record A (DN 25-1) at 136–68; Admin. Record B (DN 25-2) at 65–67, 202–44; Admin. Record C (DN 25-3) at 23–25, 374–76. One exemplary letter mailed to Be Well but addressed to patient S.B., a minor, stated (as relevant, and with all emphases in the original):

> Dear [S.B.],
>
> Thank you for trusting us with your health care coverage. Recently, you or your doctor asked us to review a request for the service listed in the table — and the request has been approved. This approval means that, based on the information given to us, the service is considered medically necessary under your benefit plan.
>
> This approval is for the specific days, service and provider listed….
>
> **Will my claim be covered?**
> It should be covered as long as:
> - You are eligible and remain enrolled in your health plan when you get the service.
> - You don't reach a benefit limit that applies to the service at the time we process the claim.
> - The information we received when we reviewed your request is accurate.
>
> Curious how much you'll owe? That will depend on your provider's bill and your benefits. You may need to pay for part or all of the cost depending on your plan's deductible, copays or benefit limits….
>
> **Other things to think about**

---

[1] The complaint initially alleged non-payment for 10 patients, Complaint ¶¶ 14–23, but the parties later agreed that Anthem covered only 5 of the patients at issue (S.B., C.J., H.L., R.M., and M.T.), Oral Arg. Tr. at 3:3–6.

2

- **Be sure other providers you see are in your plan's network**. A variety of providers play a role in your care when you go to a hospital or facility…. If you get care from an out-of-network provider, they can bill you. And depending on your plan, that may cost you more.

  …

  Sincerely,
  Anthem Care Management
  **Note:** We're also sending a copy of this letter to CHERI LEVINSON and EATING ANXIETY THERAPY CLINIC [*i.e.*, Be Well].

Admin. Record A at 136–37. At the end of this letter, Anthem specified that this approval applied to 20 visits between May and June 2018. *Id.* at 138.² The other patients' letters included similar information. *See, e.g.*, Admin Record B at 67 (20 visits for C.J. between March and May 2018); *id.* at 212–14 (25 visits for H.L. between February and March 2018); Admin. Record C at 24–25 (15 visits for R.M. between June and July 2018).

Anthem's motion for judgment on the pleadings assumed that ERISA governed all the plans and argued that anti-assignment provisions in those plans barred Be Well from bringing any of its claims. DN 13-1 at 5–6. While that motion was pending, the parties filed dueling summary-judgment motions. Anthem's changed course, contending that ERISA governs only three of the plans at issue, with the other patients covered by health plans not governed by ERISA. Anthem MSJ (DN 28-1) at 3; Oral Arg. Tr. at 3:21–4:4. Its summary-judgment motion reasserted and incorporated its earlier anti-assignment arguments, *id.* at 12, argued the coverage denials were not arbitrary and capricious under ERISA, *id.* at 12–14, and contended that Be Well's common-law claims are preempted by ERISA and fail as a matter of state law for the ERISA and non-ERISA plans alike, *id.* at 13, 15–18.

Be Well, professing ignorance regarding the nature of Anthem policies it wasn't a party to, has not disputed Anthem's position that ERISA doesn't apply to some of the plans at issue. Oral Arg. Tr. at 3:1–14. Its own summary-judgment motion contended that its promissory-estoppel claims succeeded as a matter of law, Be Well MSJ at 10–13, and argued that Anthem's denials of coverage were arbitrary and capricious (to the extent ERISA applies), *id.* at 14–19.

Briefing and argument on all three motions have whittled down the case. What remains are the claims of five patients on two theories of recovery: (1) the denials for ERISA plan beneficiaries were arbitrary and capricious under federal law and (2)

---

² The attachment to S.B.'s letter actually states that Be Well is "In-Network," which isn't accurate. DN 25-1 at 138. Anthem eventually sent Be Well another letter noting that Be Well was in fact "Out-of-network." *Id.* at 189.

3

promissory estoppel requires payment for all five beneficiaries' services under Kentucky law.[3]

## II. Be Well's Claims Regarding ERISA Beneficiaries Fail for Lack of Standing and Proof

Be Well's claims for reimbursement under the ERISA plans fail because Be Well lacks standing to assert the claims of the three beneficiaries apparently covered by ERISA plans.[4]

### A. Valid anti-assignment provisions deny Be Well standing to recover benefits allegedly due its patients

An ERISA plan "beneficiary" has standing to sue its insurer for failing to pay benefits due under the policy. 29 U.S.C. § 1132(a). But Be Well was not a party to—or beneficiary of—the ERISA benefits plans issued by Anthem to patients S.B., H.L, and R.M. Be Well MSJ at 10. And because Be Well lacked a provider agreement with Anthem, it cannot sue to enforce its own contractual relationship.

Still, even a provider "may assert an ERISA claim as a 'beneficiary' of an employee benefit plan if it has received a valid assignment of benefits." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1277 (6th Cir. 1991); *see also Brown v.*

---

[3] Although the complaint alleged six state law causes of action, Be Well has abandoned all but the promissory-estoppel claim. Oral Arg. Tr. at 5:21–6:5. Be Well also has abandoned its contention that the preauthorization letters amounted to a contract between it and Anthem. *Id.* at 4:16–23.

[4] Anthem also raises a statute-of-limitations defense with respect to the claims of the ERISA-plan beneficiaries at issue. Anthem MSJ at 19–21. These patients' health plans include a limitations provision requiring them to assert any claim under ERISA within one year of the administrative-appeal decision. *See, e.g.,* Admin. Record A at 293. Anthem bears the burden of proof on this affirmative defense. *Campbell v. Grand Trunk Western R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). It cannot carry that burden here because it provided no documentation of the date of the administrative-appeal decisions, Oral Arg. Tr. at 17: 15–20, or of any other date on which the limitations period arguably began to run.

For example, Anthem cites a letter denying S.B. services *after* August 8, 2018, but nothing regarding the earlier services that are at issue in this case. Anthem MSJ at 7 (citing Admin. Record. A at 102–03). And as to H.L., Anthem cites a letter denying the beneficiary's appeal for treatment provided between April 30 and May 4, but doesn't mention the 40 other dates on which H.L. received services that Anthem denied. *Id.* (citing Admin. Record B at 75–76).

And as to R.M., Anthem first says her plan is *not* governed by ERISA, *id.* at 3, though elsewhere Anthem's briefing contradicts that assertion, *id.* at 1 n.1. In any event, Anthem's timeliness defense fails because it again has not established the date when the statute of limitations began to run, citing only a preauthorization letter, not a payment denial or administrative appeal. *Id.* at 21 (citing Admin. Record C at 23).

4

*BlueCross BlueShield of Tenn., Inc.*, 827 F.3d 543, 547 (6th Cir. 2016) ("[T]he assignment of the right to payment is sufficient to confer derivative standing to bring suit for non-payment under ERISA."). That's what Be Well attempts to establish here, construing Anthem's pre-authorization letters, sent to the patients through Be Well, as assignments of the patients' rights to reimbursement.

But each of the ERISA plans in this case contains an anti-assignment provision, which courts typically enforce. "[A]nti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable," the Third Circuit recently held, and "every Circuit to have considered the arguments [against enforceability] … has rejected them, ultimately concluding that nothing in ERISA forecloses plan administrators from freely negotiating anti-assignment clauses…." *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018). All the Circuits that have specifically addressed the question appear to have enforced these anti-assignment provisions, at least when their language is unambiguous.[5] Although the Sixth Circuit has not squarely addressed this question in a published decision, its ruling in *Riverview Health Institute LLC v. Medical Mutual of Ohio* strongly implies that it, too, would enforce ERISA plan anti-assignment provisions. 601 F.3d 505, 519–22 (6th Cir. 2010). And the Sixth Circuit generally has enforced anti-assignment provisions in other contexts. *See, e.g., Ramsey v. Allstate Ins. Co.*, 416 F. App'x 516, 519 (6th Cir. 2011). Be Well has offered no reason why we would expect the Court of Appeals to apply a different rule to the anti-assignment provisions in the health plans at issue.

Be Well contends the anti-assignment clauses are nevertheless unenforceable for two reasons: (1) their specific language does not bar the assignments Be Well received, and (2) Anthem either waived reliance or should be estopped from enforcing the anti-assignment provisions. Be Well Response to MJOP (DN 15) at 2–3; Be Well MSJ at 10–11, 17. Because neither argument is persuasive and the relevant facts are undisputed, the Court grants Anthem's motion for summary judgment with respect to Be Well's derivative ERISA claims.[6]

---

[5] *See, e.g., Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes*, 371 F.3d 1291, 1296 (11th Cir. 2004) ("[A]n unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable."); *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1039 (8th Cir. 2016) ("Anti-assignment clauses in ERISA plans are valid and enforceable.") (citation omitted); *Spinedex Physical Therapy USA v. United Healthcare of Ariz.*, 770 F.3d 1282, 1296 (9th Cir. 2014) (same); *Bloom v. Indep. Blue Cross*, 340 F. Supp. 3d 516, 524 (E.D. Pa. 2018) (a "valid and enforceable anti-assignment clause" in an ERISA-governed plan "meant that plan participants could not and therefore did not transfer their rights to sue under ERISA to Plaintiff healthcare providers").

[6] The Court's ruling would be the same if the anti-assignment issue were considered under the Rule 12(c) motion for judgment on the pleadings, which carries the same standard of review as a Rule 12(b)(6) motion for failure to state a claim. *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Rule 56(a), of course, authorizes a court to grant

**1. Contractual language.** The language in the ERISA beneficiaries' plans unambiguously bars them from assigning payment rights to Be Well so Be Well could assert those rights in litigation. One plan bars assignment of the "right to receive payment," Admin. Record B at 466, which is exactly what Be Well seeks here.[7]

The other plans also prohibit assignment of "benefits." Admin. Record A at 279, 571.[8] Be Well denies "that 'benefit' is synonymous with the right to payment," (implicitly acknowledging that the word "payment" as used in footnote 7 above is precisely on point). Be Well Response to MJOP at 2–3. But it cites no legal authority drawing this distinction, and never offers any definition for "benefit" that would differ from its apparently plain meaning: a compensated medical service. While ERISA doesn't define the term, Anthem's plan documents repeatedly use "benefit" when explaining payments. *See, e.g.*, Admin Record A at 203 ("The Schedule of Benefits is a summary of the Deductibles, Coinsurance, Copayment, maximums, and other limits

---

summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[7] This anti-assignment clause, found in Admin. Record B at 466 (H.L.), states:

> You authorize the Claims Administrator, on behalf of the Employer, to make payments directly to Providers for Covered Services. The Claims Administrator also reserves the right to make payments directly to you. Payments may also be made to, and notice regarding the receipt and/or adjudication of claims, an Alternate Recipient, or that person's custodial parent or designated representative. Any payments made by the Claims Administrator will discharge the Employer's obligation to pay for Covered Services. You cannot assign your right to receive payment to anyone else, except as required by a "Qualified Medical Child Support order" as defined by ERISA or any applicable Federal law. Once a Provider performs a Covered Service, the Claims Administrator will not honor a request to withhold payment of the claims submitted. The coverage and any benefits under the Plan are not assignable by any Member without the written consent of the Plan, except as provided above.

[8] The anti-assignment clause found in Admin. Record A at 279 (S.B.) states:

> The Group cannot legally transfer this Certificate, without obtaining written permission from the Plan. Members cannot legally transfer the coverage. Benefits available under this Certificate are not assignable by any Member without obtaining written permission from the Plan, unless in a way described in this Certificate.

The clause in Admin. Record C (M.T) at 302–03 is similar in all relevant respects.

6

that apply when you received Covered Services…."); *id.* at 214 ("Benefits for Covered Services may be payable subject to an approved treatment plan…."); *id.* at 247 ("The amount of benefits paid is based upon…."). Dictionary definitions are in accord. *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY at 144 (1991) (defining "benefit" as "a *payment* or service provided for under an annuity, pension plan, or insurance policy") (emphasis added); WEBSTER'S NEW INTERNATIONAL DICTIONARY at 253 (2d ed. 1934; 1945) (defining "benefit" as "pecuniary advantage; profit").

The Eleventh Circuit, moreover, has specifically held that an anti-assignment clause referring to "Benefits under [the plan]" referred to payments and therefore prevented a beneficiary from assigning his right to payment to a provider. *Griffin v. Coca-Cola Enters.*, 686 F. App'x 820, 822 (11th Cir. 2017). So has at least one district court in this Circuit. *See Air Trek v. Capital Steel & Wire*, No. 1:17-cv-1145, 2019 WL 4873401, at *10–11 (W.D. Mich. Oct. 2, 2019) (assignment of right to payment was invalid based on anti-assignment clause referring to "right or benefit provided for under any of the benefit programs"). Be Well points to no contrary precedent. *See* Be Well Response to MJOP at 2–3. In this context, the Court is unaware of any reading of these clauses that would permit the patients to assign a provider their rights under the plan. Because both formulations of the anti-assignment provision unambiguously preclude the assignments Be Well purported to obtain, the attempted assignment is ineffective. The terms of the plans prevent Be Well from coming to court in its patients' shoes.

**2. Waiver and estoppel.** Be Well attempts to avoid enforcement of those terms based on Anthem's allegedly inconsistent words and actions. The doctrines of waiver and equitable estoppel, it contends, bar Anthem from changing course and enforcing the anti-assignment provisions. Be Well MSJ at 14–15.

Waiver is an easy question. This doctrine prevents a party from enforcing a right that it intentionally relinquished or abandoned. *PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 697 (6th Cir. 2019); *see also Health Cost Controls v. Wardlow*, 825 F. Supp. 152, 156–57 (W.D. Ky. 1993) (applying waiver to an ERISA plan). And Be Well concedes that Anthem never said it intended to relinquish its rights under the anti-assignment clauses and offers no evidence that Anthem implicitly waived those rights, either. Be Well Response to MSJ at 8; Oral Arg. Tr. at 23:11–24:8.

Equitable estoppel presents a somewhat closer question. The doctrine "often operates to prevent a party from contesting an issue of fact or advancing a particular claim or defense," *Thomas v. Miller*, 489 F.3d 293, 298–99 (6th Cir. 2007), especially if that party previously made a contrary representation that the opposing party detrimentally relied on, *Apponi v. Sunshine Biscuits, Inc.*, 652 F.2d 643, 649 (6th Cir. 1981). "[E]quitable estoppel can apply in ERISA cases when welfare benefits plans … are at issue." *Thomas*, 489 F.3d at 297. The party asserting it must establish five elements:

> (1) "conduct or language amounting to a representation of material fact;"
>
> (2) "the party to be estopped must be aware of the true facts;"
>
> (3) "the party to be estopped must intend that the representation be acted on[;]"
>
> (4) "the party asserting the estoppel must be unaware of the true facts;" and
>
> (5) "the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment."

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998).

As just noted, Anthem never said it wouldn't enforce the anti-assignment provisions. Indeed, Anthem didn't say anything at all about the anti-assignment provisions, as Be Well has conceded, Be Well Response to MSJ at 8; Oral Arg. Tr. at 23:11–24:8. The preauthorization letters said only that the treatment "should be covered" by Anthem. They did not say who would get paid, or how. At argument, Be Well's counsel acknowledged this explicitly:

> THE COURT: And what … [in] the preauthorization letter or these other communications did Be Well rely on reasonably to expect to get paid directly regardless of an anti-assignment provision?
>
> MR. EARL: I don't—I can't point to any language that would address that concern or that specific issue. I don't see anything in there that says—there's just nothing that addresses assignment or non-assignment or assignability or non-assignability.

Oral Arg. Tr. at 23:25–24:8. Absent any such representation—much less *mis*representation—from Anthem about assignment, it becomes hard to see how Be Well could support this critical element of its estoppel argument. *See, e.g., Korman v. ILWU-PMA Claims Office*, No. 2:18-cv-7516, 2019 WL 3033529, at *5 (C.D. Cal. July 3, 2019) (provider could not establish equitable estoppel absent "alleg[ation] that the representatives promised that Plaintiff would be paid as an assignee for performing the medical procedures"). Anthem did not promise, or even tell, Be Well that it would be paid as an assignee.

Nor did Anthem's conduct tacitly represent to Be Well that Anthem would allow it to pursue payment on behalf of patients as an assignee. Be Well acknowledged at argument that it could not point to any preexisting dealings with Anthem, or anything else besides the handling of the claims at issue here, that indicated Anthem would not enforce the anti-assignment provisions. Oral Arg. Tr. at

8

11:17–12:23. Nor did Be Well's correspondence to Anthem indicate that these patients were trying to assign their benefits to the provider. Anthem Response to MSJ at 5. So Be Well hasn't pointed to evidence that Anthem knowingly acquiesced, even tacitly, to its beneficiaries' assignments.

Rather, Be Well contends Anthem must've known the provider was standing in the patients' shoes: the organizations dealt with one another directly, not through patient intermediaries, regarding payment and treatment issues. Be Well MSJ at 15. And Anthem never previously raised the anti-assignment provisions. *Id.*

But an insurer's direct interactions with a provider *regarding* a patient don't necessarily imply an assignment *by* that patient. *See Merrick v. UnitedHealth Group*, 175 F. Supp. 3d 110, 121 (S.D.N.Y. 2016) ("The fact that [the insurer] made direct payments to [the providers], as it was explicitly authorized to do under the plan, does not estop it from raising the anti-assignment provision to challenge Plaintiffs' standing."). Indeed, the health plans at issue contemplated bilateral dealings between the insurer and providers during the claims-administration process. *See, e.g.*, Admin. Record B at 466 ("You [that is, the beneficiary] authorize the Claims Administrator … to make payments directly to Providers for Covered Services."). This is consistent with ERISA regulations that permit a claimant's "authorized representative" to pursue a benefit claim and administrative appeal on the claimant's behalf. 29 C.F.R. § 2560.503-1(b)(4). The regulation does not, however, speak in terms of assignment or say an authorized representative may pursue *litigation* on a claimant's behalf. It "does not validate assignments, and does not grant standing to medical providers to sue for additional payments for medical services they provided to participants and beneficiaries." *Pro. Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, No. 14-6950, 2015 WL 4387981, at *5 n.5 (D.N.J. July 15, 2015). That Anthem communicated with Be Well about claims does not mean Anthem recognized Be Well as the assignee of those claims. *See Korman*, 2019 WL 3033529, at *7 ("[A]n ERISA plan does not waive its right to assert an anti-assignment defense at trial by failing to assert the anti-assignment provision as a basis for denying a claim under the ERISA plan.").

Nor does the record indicate Anthem was aware (and Be Well unaware) of the alleged "true facts" regarding assignment enforcement—a further shortcoming in Be Well's equitable argument. *See Sprague*, 133 F.3d at 403 (party must also have "intend[ed] that the representation be acted on"). And a "party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents." *Id.* at 404. Even assuming Anthem made a "representation of material fact," therefore, the lack of evidence regarding the parties' awareness and Anthem's intent would prevent equitable estoppel from barring enforcement of these anti-assignment provisions.

To be sure, trial courts within this circuit have held that insurer conduct in some circumstances could estop enforcement of otherwise valid anti-assignment

provisions.[9] Each of these decisions relied on a particular Fifth Circuit opinion: *Hermann Hospital v. MEBA Medical and Benefits Plan*, which concluded that an express assignment from the patient to the provider, coupled with long-standing direct negotiations between an insurer and a provider, overcame an anti-assignment provision and permitted the provider to sue on the patient's behalf. 959 F.2d 569, 573–74 (5th Cir. 1992), *overruled on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 689 F.3d 229 (5th Cir. 2012) (en banc).

Those decisions don't compel the Court to exercise its equitable authority in the same manner here, however. In *Hermann* the insurer's "protracted failure to assert the clause when [the provider] requested payment" was enough to supersede an anti-assignment provision that the panel interpreted not to reach providers in the first place. 959 F.2d at 575. The court, in essence, deemed it inequitable to stretch a contractual provision beyond its fairest reading—not to ignore the best reading of the contract to serve equitable interests. *See id.* ("We interpret the anti-assignment clause as applying only to unrelated, third-party assignees—other than the health care provider of assigned benefits—such as creditors who might attempt to obtain voluntary assignments to cover debts having no nexus with the Plan or its benefits…."). In any event, *Hermann* also distinguished the "right to sue for denial of coverage" (permitted) from the "distinct … right to sue to recover payment for plan benefits" (not permitted). *Id.* at 573; *see Dialysis Newco v. Community Health Sys. Group Health Plan*, 938 F.3d 246, 255 (5th Cir. 2019) ("the right to receive direct payment is separate from the right to sue for those payments"). And *Hermann* and the decisions following it, of course, relied on extensive and long-standing provider/insurer negotiations. *See Hermann*, 959 F.2d at 574 (three years of back-and-forth). Likewise in *Productive MD*: the insurer directly paid 167 claims over four years, notwithstanding an anti-assignment clause. 969 F. Supp. 2d at 922–23; *Univ. of Tenn. William F. Bowld Hosp. v. Wal–Mart Stores, Inc.*, 951 F. Supp. 724, 726–27, 731 (two years of back-and-forth); *Spectrum Health v. Valley Truck Parts*, No. 1:07-cv-1091, 2008 WL 2246048, at *4 n.4 (W.D. Mich. May 30, 2008) (two years).

Here, Be Well offers no similarly long negotiations, discussions, or unbroken pattern with Anthem. Instead, Be Well points to routine explanation-of-benefits letters and payment for 20 H.L. visits (as against 64 denials) to contend the assignment was effective. *See* Admin. Record B at 87, 99, 130, 134. This cannot support invoking the equitable doctrine of estoppel to overcome express and unambiguous contractual terms governing the patients' relationship with Anthem. So Be Well lacks standing to sue for ERISA benefits as an assignee of patients whose plan provisions bar assignment.

---

[9] *See, e.g., Productive MD LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901 (M.D. Tenn. 2013); *Univ. of Tenn. William F. Bowld Hosp. v. Wal–Mart Stores, Inc.*, 951 F. Supp. 724, 731 (W.D. Tenn. 1996); *Spectrum Health v. Valley Truck Parts*, No. 1:07-cv-1091, 2008 WL 2246048, at *4 n.4 (W.D. Mich. May 30, 2008).

### B. Be Well's promissory-estoppel claims fail with respect to the ERISA beneficiaries

Be Well also brought a claim in its own right that doesn't depend on the beneficiaries' assignment of rights. Relying on Kentucky law, Be Well claimed that promissory estoppel requires Anthem to reimburse Be Well for treating Anthem ERISA beneficiaries on the understanding that Anthem would pay. Unlike the assignment claims rejected above, these aren't claims for benefits under the ERISA plan, *see* 19 U.S.C. § 1132, which would depend on the contractual relationship between Anthem and its members. That insurer-beneficiary relationship is what ERISA governs, and federal law preempts state laws and lawsuits purporting to govern the relationship in conflict with federal regulations. Oral Arg. Tr. at 8:8–10:23 (parties agreeing that ERISA and promissory-estoppel claims are distinct).

Rather, these promissory-estoppel claims pertain to the non-contractual (or quasi-contractual) relationship between Anthem and Be Well. This theory of recovery rests on their interactions with and expectations about one another: specifically, the reliance allegedly induced by Be Well's receipt of Anthem preauthorization letters stating that the insurer "should" cover the eating-disorder services at issue. Be Well clarified at argument that it relies solely on the preauthorization letters; the record includes no evidence or statements related to its promissory-estoppel theory aside from these letters, a few of which did in fact lead to payment. Oral Arg. Tr. at 6:19–21 ("There is no additional evidence other than these letters that were sent to the patients and to [Be Well]."); *see also id.* at 12:11–17 (recognizing that Anthem paid some claims).) In response to the Court's question whether Be Well relied on any specific communications in deciding to treat these patients despite the lack of a contractual agreement with Anthem, Be Well's counsel responded that he "d[id]n't think there's anything that would rise to that level other than the preauthorization letters that says we're approving of this treatment," the "direct communications with Be Well about the particular treatments that … were approved," and "the communications regarding the billings." Oral Arg. Tr. at 23:11–24. But Be Well has not explained how later payments (along with contemporaneous *denials*) induced it to rely on (or increase reliance on?) representations made in earlier letters that it was already relying on. So the Court's analysis is effectively limited to the preauthorization letters.

And those letters standing alone, unfortunately for Be Well, do not contain the necessary "promise" from Anthem to pay.[10]

---

[10] The law bars Be Well from supplementing such communications with terms of the ERISA plan itself to make out a sufficiently definite promise. A plaintiff may not make out a common-law claim such as this one by looking to the terms of an ERISA plan regarding the scope of a beneficiary's coverage. If the plaintiff does, then the claim would be preempted as falling within the scope of ERISA. *See* 29 U.S.C. § 1144(a) (ERISA preempts "all State laws insofar as they may now or hereafter *relate to* any employee benefit plan.") (emphasis added);

11

Promissory estoppel requires, first and foremost, a promise. The "promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person," and the promise must in fact "induce such action or forbearance." *Scott v. Forcht Bank*, 521 S.W.3d 591, 595 (Ky. Ct. App. 2017) (quoting *Meade Constr. Co. v. Mansfield Commercial Elec.*, 579 S.W.2d 105, 106 (Ky. 1979)). Relief is available only if "injustice can be avoided only by enforcement of the promise." *Id.* And the "promise must be clear, definite, and unambiguous." *Caudill v. United Parcel Serv.*, No. 3:09-cv-547, 2012 WL 3637648, at \*2 (W.D. Ky. Aug. 23, 2012).[11] A conditional promise is not sufficient. *Fed. Home Loan Mortg. Corp. v. Gilbert*, 656 F. App'x 45, 48 (6th Cir. 2016).

The primary question is whether Anthem's preauthorization letters contain a promise. Kentucky authorities like those mentioned above set a high bar for establishing this species of non-contractual liability, but do not address anything resembling the factual scenario at issue. Courts outside this jurisdiction, for their part, are not uniform in their treatment of promissory-estoppel claims based on preauthorization letters alone. *Compare MedWell, LLC v. Cigna Corp.*, No. 20-cv-10627, 2021 WL 2010582, at \*5 (D.N.J. May 19, 2021) ("courts have held that a preauthorization can represent a clear and definite promise" for purposes of a motion to dismiss), *with Armijo v. ILWU-PMA Coastwise Indem. Plan*, No. 15-cv-1403, 2018 WL 6265062, at \*9-10 (C.D. Cal. Nov. 14, 2018) ("issuance of a preauthorization letter is not a guarantee of payment").[12]

But the bulk of authority indicates a preauthorization letter alone doesn't support a claim for promissory estoppel, at least at the motion-to-dismiss stage. For

---

*Plastic Surgery Ctr. v. Aetna Life Ins. Co.*, 967 F.3d 218, 231–34 (3d Cir. 2020). In other words, if identifying a promise to pay means treating the ERISA plan as a "critical factor in establishing liability" under state law, then that state law "relates to" an employee benefit plan and is therefore preempted by ERISA. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139–40 (1990). Because Be Well's complaint hasn't made out a claim for promissory estoppel regardless of whether it looks to the terms of the ERISA plan, the Court needn't confront Anthem's preemption argument.

[11] A prior decision from the Western District of Kentucky canvassed many authorities indicating a promise must be clear, definite, and unambiguous. *Street v. U.S. Corrugated, Inc.*, No. 1:08-cv-153, 2011 WL 304568, \*6 (W.D. Ky. Jan. 25, 2011). It cited many cases for that proposition, including *Hesco Parts Corp. LLC v. Ford Motor Co.*, 377 F. App'x 445, 447 (6th Cir. 2010) (promissory estoppel claim failed because "no definite promise"), *Abney v. Amgen, Inc.*, 443 F.3d 540, 549 (6th Cir. 2006) (same, no "evidence of a clear promise"), and *Grand Connectivity, LLC. v. Centennial Commc'ns Corp.*, 106 F. App'x 928, 929 (6th Cir. 2004) (same, no "definite and clear promise").

[12] While *Armijo v. ILWU-PMA Coastwise Indemnity Plan* addressed a preauthorization letter under the lens of an *equitable*-estoppel claim, the general principle would apply to *promissory*-estoppel claims as well.

12

example, in *Haghighi v. Horizon Blue Cross Blue Shield of N.J.*, No. 19-cv-20483, 2020 WL 5105234, at *6 (D.N.J. Aug. 31, 2020), the court concluded the out-of-network provider didn't sufficiently allege a promissory-estoppel claim because the written authorization that "pre-approved the procedures at issue" didn't "relate to a fixed or agreed-upon rate of compensation." And in *Columna, Inc. v. Aetna Health, Inc.*, No. 9:19-cv-80522, 2019 WL 4345675, at *5 (S.D. Fla. Sep. 12, 2019), an "express authorization" of treatment was insufficient to support a promissory-estoppel claim because it didn't state "precisely what services would be covered, how much payment would be made for those services, when payment would be made, or to whom payment would be made."

These decisions show that a "mere verification" of coverage is likely not an "unambiguous promise to reimburse" a provider for any and all service charges. *Advanced Ambulatory Surgical Center, Inc. v. Connecticut General Life Ins. Co.*, 261 F. Supp. 3d 889, 896 (N.D. Ill. 2017). Rather, courts typically look for something more than a simple preauthorization letter to create a clear and definite promise. The district court in *Broad St. Surgical Center, LLC v. UnitedHealth Group, Inc.* found such a promise when representatives for the insurer and provider participated in detailed telephone conversations about the patient and the specific procedures provided. No. 11-cv-2775, 2012 WL 762498 (D.N.J. Mar. 6, 2012). Critically, "[i]n each telephone call, [the provider's] representative was informed by the [insurer's] representative that there was coverage for [the provider's] facility fees and for the procedures involved." *Id.* at *9.

So do the preauthorization letters in this case create a "clear and definite" promise? On their face, they do not. The text of the letter (which is identical in all relevant ways for these five patients) states only that treatment is "medically necessary" and "should be covered," subject to various limitations. *See, e.g.*, Admin. Record A at 136–37. Deeming a service medically necessary is not the same as promising to cover a service.[13] And "should" is not "clear, definite, and unambiguous." *Caudill*, 2012 WL 3637648, at *4.

To the extent the language includes a promise, it would be conditional one. And the Sixth Circuit has recognized that "a conditional promise will not do." *Gilbert*, 656 F. App'x at 48. Neither Be Well nor this Court could determine, based on the limitations set forth in the letter, whether Anthem had committed itself to ultimately paying. The letter alone simply does not provide enough detail and commitment for the law to enforce its representations as a binding promise, notwithstanding Be

---

[13] Anthem's "Health Certificate," part of the record here, considers treatment "medically necessary" when it is, among other things, "[m]edically appropriate for and consistent with the symptoms and proper diagnosis or treatment of the [patient's] condition…." Admin. Record A at 309. And it goes on to distinguish medical necessity and coverage. *Id.* (provider decision regarding treatment or services does not establish it is "Medically Necessary *or a Covered Service* and does not guarantee payment." (emphasis added).

13

Well's reliance. And although broader evidence of industry practice and understanding is spare, at least some caselaw indicates that "it is well understood in the healthcare industry … that issuance of a preauthorization letter is not a guarantee of payment…." *Armijo*, 2018 WL 6265062, at *9 ("[T]he general understanding is that while preauthorization is the first step for some claims, those claims will still be subject to review—and thus, possibly denial—once the claim has actually been submitted.").

Be Well primarily relies on three Kentucky cases to support its promissory estoppel argument. Each of these decisions recites the elements of promissory estoppel in contexts far removed from healthcare or prior-authorization letters. *See Meade Const. Co., Inc. v. Mansfield Commercial Elec., Inc.*, 579 S.W.2d 105 (Ky. 1979) (subcontractor liable to general contractor for failing to honor a contract bid); *McCarthy v. Louisville Cartage Co.*, 796 S.W.2d 10 (Ky. Ct. App. 1990) (employer promised to provide life insurance coverage to employee); *Sawyer v. Mills*, 295 S.W.3d 79 (Ky. 2009) (employee's reliance on employer's promise was not reasonable).

But even cases outside the healthcare context support the conclusion that the preauthorization letters do not amount to a promise. In *Caudill*, a court in this district rejected a promissory-estoppel claim based a written statement that corporate changes "should not affect" the plaintiff "in the near future." 2012 WL 3637648, at *4. Given those "unclear and indefinite" limitations, this "ambiguous" statement had no "discernable meaning" in and of itself; interpreting it as a guarantee would require looking to other materials outside the writing. *Id*. Other decisions in this circuit have rejected similarly indefinite statements, interpreting them not to give rise to a promise supporting a promissory-estoppel claim. *See, e.g.*, *Snyder v. Ag Trucking, Inc.*, 57 F.3d 484, 489 (6th Cir. 1995) (statement that "there would be a place" for the employee in a new company was too general to create a promise); *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 792 (W.D. Ky. 2001) (statements made during negotiations were "not sufficiently clear and definite" to support promissory estoppel). Similarly, the Anthem letters do not identify any services that *will* be compensated—only services that "*should be*" compensated, so long as several plan conditions were satisfied. Be Well cannot say that Anthem made a freestanding promise independent of the plans.

The plan, not the preauthorization letter, is after all the source of Anthem's obligation (if any) to pay. A remedy still might be available to Be Well if its *patients* pursued a claim under the ERISA plans they are parties to; any recovery might flow from the patient to the provider. Although this may not appear a very efficient or appealing course from Be Well's perspective, neither is its proffered alternative: too readily allowing state-law causes of action to supplement or circumvent the specific rights, remedies, and procedures set forth in federally-regulated health plans and in ERISA itself. Remember, a principal aim of ERISA is to standardize the administration of these plans. "[T]he detailed provisions of § 502(a)," the Supreme Court has held, "set forth a comprehensive civil enforcement scheme that represents

a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). These "policy choices," which Congress made and set forth through "the inclusion of certain remedies and the exclusion of others under the federal scheme," could be "completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* at 53.

### III. Neither Side Has Established a Right to Summary Judgment with Respect to the Promissory Estoppel Claims for Non-ERISA Beneficiaries

The parties have litigated this case almost entirely on the premise that ERISA governed the plans at issue. Now Anthem has represented that it doesn't govern two of them. Anthem MSJ at 3 (conceding that M.T. and R.M. are not ERISA-plan beneficiaries). And Be Well says it has no way of disputing that. Indeed, Be Well's motion for summary judgment doesn't address the non-ERISA plans at all. Anthem's did, to be sure: it contended that the promissory-estoppel claims for non-ERISA plans failed for many of the same reasons they failed for the ERISA plan beneficiaries. *Id.* at 15–16. But Be Well didn't respond in full, arguing only that ERISA preemption doesn't necessarily apply to these claims. Be Well Response to MSJ at 8–9. True enough—it doesn't apply at all to non-ERISA plans.

This gap in the parties' presentation is understandable, yet critical. Discovery, according to the parties, has thus far been limited to the administrative record under ERISA. And the analysis of Be Well's promissory-estoppel claims might look different outside ERISA's shadow. Despite three fully briefed motions, the complex issues of jurisdiction, preemption, and interpretation implicated by this dispute were not presented to the Court in a non-ERISA context. And as noted above, only limited caselaw exists to guide this Court in predicting how Kentucky courts would analyze a promissory-estoppel claim in this context; none of the promissory-estoppel caselaw cited by Be Well comes from the healthcare context. Therefore the Court is loath to issue a ruling that could have significant disruptive effects in the healthcare and insurance sectors based on this fleeting presentation.

Instead, the Court asks the parties to confer and propose a supplemental schedule and briefing format that would address the appropriate treatment of the remaining claims: whether the parties agree that ERISA in fact doesn't apply, whether and how the analysis differs outside the ERISA context, whether additional discovery is appropriate before considering summary judgment, and whether those claims are most appropriately heard in this court or another forum.

## ORDER

The Court grants in part Anthem's motion for summary judgment (DN 28) and enters judgment against Be Well regarding the ERISA claims purportedly assigned to it. The Court further denies Be Well's motion for summary judgment (DN 27) without prejudice, and denies Anthem's motion for judgment on the pleadings (DN 13) as moot. Finally, the Court orders the parties to confer and propose a schedule and format that will allow them to appropriately present any outstanding motions and requests regarding non-ERISA plans.

cc: Counsel of Record